UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**JUDY FENWICK,**
                 **Plaintiff**

v.                                                      Civil Action No.
                                                           3:05CV584-J

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                 **Defendant**

### MEMORANDUM OPINION

      This case presents plaintiff Judy Fenwick's challenge to the decision of the Commissioner denying her claim to Disability Insurance Benefits and Supplemental Security Income payments. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be vacated and the matter remanded for further proceedings.

      Ms. Fenwick filed her applications in February of 2003, alleging that she had been unable to engage in substantial gainful work since June of 1999. After a hearing, the Administrative Law Judge ("ALJ") determined that Ms. Fenwick did not have a severe impairment within the meaning of 20 CFR Secs. 404.1520 and 416.920. That is, the ALJ determined that Ms. Fenwick did not suffer from a condition that significantly limits her ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking.

      If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Ms. Fenwick had worked as a Certified Nurses Aide and a machine operator before she stopped working. Her difficulties began on June 28, 1999, when the car in which she was riding was struck by another vehicle from the rear. She claimed that after the accident, she experienced headaches, neck and shoulder pain. She also stated that the medication she took for the pain caused nausea, dizziness, a light-headed feeling and sleep disturbances.

The ALJ found that "claimant has neck and shoulder pain and headaches without any objective evidence. ... The claimant's neck and shoulder pain and headaches impose no more than a minimal effect on her ability to do basic work activities. The claimant's impairments do not cause significant vocational limitations." Tr. 21.

Ms. Fenwick's primary care physician noted that she first complained of neck pain in early July of 1999. The diagnosis at that time was "headache and muscle strain." Tr. 166. The office notes reflect continued complaints of pain. A September 1999 x-ray showed "anterior spurring and degenerative change at C6-7," but the notes also record that she "has not been taking anything for pain relief. Tr. 166. Also in September of 1999, a cervical spine CT showed "posterior osteophyte formation and mild uncovertebral degenerative change C5-6." Tr. 133. In January 2000, noting "persistent" headaches and neck pain, the primary care practice referred

her to a specialist for evaluation. Tr. 165.

Dr. Reloj, the neurologist, saw Ms. Fenwick June 15, 2001 and recorded an essentially normal clinical examination. Tr. 180. Dr. Reloj opined "she probably developed post concussion syndrome, resulting into headache," but noted that headaches due to post concussive syndrome "usually improve and are unheard of after two years." He observed that head injury could trigger migraine headache and could result in a chronic migraine headache. He also suspected she might be having cervical radiculopathy. Tr. 181. By October, Dr. Reloj noted that her symptoms "are stable." Tr. 177. His note of April 19, 2002 states, "The patient's headache is much better. She denies any other problems." Tr. 175. However, by July, she was complaining of increased headaches, although she was not taking anything for them. As of February 2003, Dr. Reloj noted that Ms. Fenwick reported increased headache; she complained of pain in the shoulders; she was taking her medication. Tr. 172. Between that point and her next visit (August 18), she had stopped taking her medication. Tr. 171. Dr. Reloj's January 2004 examination showed the same tenderness in the neck as noted previously. Tr. 170.

In April of 2003, an examining consultant found reduced range of cervical motion, but he did not have available to him the radiological studies that had previously been done. He had no doubt that she was suffering from headaches; his only question was whether they were migraine in nature. Dr. Winner concluded, "I do not see any *dramatic* limitations in the ability of this patient to sit, stand, move about, or handle and carry objects" [emphasis added]. Tr. 141.

The Commissioner contends that the evidence was sufficient to show that Ms. Fenwick's headaches and neck pain and restriction of movement were only slight abnormalities that could not interfere with the ability to perform basic work activities. Landsaw v. Secretary of Health

3

and Human Services, 803 F.2d 211, 213 (6th Cir. 1986).  The plaintiff argues, however, that the ALJ erred by failing to include in his analysis the clinical and objective evidence of her conditions.

This Court agrees that two factors prevent a determination that substantial evidence supports the ALJ's conclusion.  The first problem is that the ALJ stated that claimant's neck and shoulder pain and headaches were "without any objective evidence."  The record clearly includes CT scans, x-rays, and range of motion studies.  Given that the ALJ did not discuss these, his statement that there was no objective evidence strongly suggests that he did not consider them.  The second problem concerns Dr. Winner's opinion that he did not see "dramatic" limitation of ability to perform work activities.  There is nothing in his report or elsewhere in the record to assist a fact-finder in determining whether "dramatic" means "more than minimal" or "extensive" or "disabling" or something else altogether.

Accordingly, this matter must be remanded for further proceedings not inconsistent with this opinion.